# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                       Case No. 03-12901-WRS

                                      Chapter 13

DOROTHY A. SPIKNER,

       Debtor

## MEMORANDUM DECISION

This Chapter 13 case came before the Court for hearing on the Motion for Relief From

the Automatic Stay which was filed by Americredit Financial Services, Inc. (Doc. 32). The

Debtor was present by counsel Rafael Gil, III, no appearance was made by Americredit. Gil

advised the Court that counsel for Americredit has e-mailed the Court a proposed agreed order.

The Court notes that it has received an e-mail from Americredit's lawyer, however, the Court

notes three problems with this matter. First, Americredit indicates in its motion that it will not

consider an adequate protection agreement, yet they now submit one after forcing the matter to a

hearing, with all the attendant administrative burdens. Second, Americredit's motion fails to

allege with sufficient specificity its grounds. Third, the proposed order contains a "drop dead"

provision relating to payments to the Chapter 13 Trustee. The undersigned does not favor such

provisions. As Americredit's counsel was not available to explain the necessity for such an

order, the Court is unwilling, in this case, to permit such a provision. For the reasons set forth

below, the motion is denied.

## A. CHECKING THE "NO" BOX

In May of this year, this Court promulgated its first local rules. Local Rule 4001-1(c)

requires that in cases under Chapter 13, a party moving for relief from the automatic stay must

state whether or not it will consider an adequate protection agreement. In those instances where

it will, the Court holds the motions in abeyance for a period of 45 days to give the parties time to

negotiate their agreement, reduce it to writing, obtain the Chapter 13 Trustee's approval and then

submit it to the Court. In those instances where the moving party indicates that it will not

consider an adequate protection agreement, the Court promptly sets the motion for a hearing. In

this case, the moving party checked the "no" box, indicating that it would not consider an

adequate protection agreement and yet it now has submitted a proposed adequate protection

agreement. To understand why this is a problem one must consider the context.

Those who practice bankruptcy law on a regular basis understand the dynamics of

consumer bankruptcy law practice. Regardless of whether one represents debtors or creditors, or

if one is a bankruptcy judge, consumer bankruptcy practice is a numbers game. We deal in a

large volume of bankruptcy cases and contested matters and must look for ways to handle this

volume on an expeditious basis.

One of the most frequently filed motions in this Court is a motion for relief from the

automatic stay. <u>See</u>, 11 U.S.C. § 362; <u>see also</u>, Rule 4001, Fed. R. Bankr. P.; LBR 4001-1. At

one time in the not too distant past, every such motion was set for a hearing. Over time, the

Court observed two things. First, in Chapter 7 cases, most of the motions were granted either

without opposition or with only token opposition. Second, in Chapter 13 cases, most motions

were settled by way of adequate protection agreements.[1] We found that it made sense that these

---

[1] These agreed orders have developed a vocabulary of their own. For example, a "drop-dead" provision means that upon the happening of certain contingencies, the automatic stay will terminate without further orders or proceedings in court. A typical drop dead provision will provide that after 20 days notice of a monetary default, the automatic stay will terminate if the default is not cured. Some judges do not favor these kinds of orders as it is impossible to

2

motions in Chapter 7 cases be disposed of by way of negative notice. By that the Court means that an order would be entered stating that the motion would be granted unless a response was filed within 20 days. This simple procedure resolved the vast majority of these kinds of motions with a minimum of expenditure of time both on the part of the Court and counsel for the parties. This procedure has now been incorporated into Local Rule 4001-1(b). This procedure works well.

In cases under Chapter 13, the procedure breaks down, due to the difference in the goals of the debtor in a case under Chapter 13 compared with a debtor in a case under Chapter 7. In most Chapter 13 cases, the debtor seeks to keep his home and his car and is attempting to work out his difficulties with his creditors. Thus, a negative notice order would invariably draw an objection, necessitating a hearing. Therefore, in cases under Chapter 13, prior to the promulgation of its new local rules, the Court would schedule motions for hearing, saving the entry of a negative notice order, which would not dispose of many motions. On any given Chapter 13 motion docket calendar, the Court would have scores of such motions set for hearing. Only on rare occasions would the parties actually show up in court prepared with witnesses and documentary evidence, ready to try their case. Chapter 13 motion dockets became an exercise in taking settlements. It was not unusual for the undersigned to sit through a two- or three-hour motion call and not actually decide anything. Indeed, of the many hundreds of motions for relief from the automatic stay filed in any given year, the undersigned would actually conduct an

---

determine from the Court's record whether the automatic stay is in effect as the continued existence of the automatic stay is contingent upon the debtor's prompt payment of his obligation. This Court routinely approves negotiated adequate protection agreements with drop dead provisions, but recognizes that there is some potential for abuse. This is again a concession to practicality and efficiency. Orders of this kind are sometimes called "conditional denial orders."

3

evidentiary hearing in no more than one-half dozen cases. The question then becomes, how does one solve the problem of the colossal waste of time both for the Court and counsel for the parties.

The Court has promulgated Local Rule 4001-1(c) in an effort to solve this problem. In those cases where the creditor is willing to consider an agreement with the debtor, which in the undersigned's experience is a large majority of the cases, the Court will simply hold the motion and wait for an agreed order. Bear in mind that when a matter is set for a hearing the Court must set the matter on a calendar, prepare a notice of hearing, send copies of the notice of hearing to interested parties and make a docket entry of the notice of hearing. These four administrative chores may not sound like much in isolation, but if one multiplies this process by many hundreds, or thousands over the course of a year, this poses an administrative problem. Moreover, the process is not nearly at an end. The Court must next prepare for a hearing. A calendar of the hearing must be prepared and distributed to chambers personnel as well as interested members of the bar. The undersigned must then look through the calendar and attempt to guess, frequently incorrectly, which one or two of the 50 to 100 motions will actually require some thought. But the process is still not nearly at an end.

Once the matter is called for hearing, one of three things will usually happen. First, the parties will announce they have settled the matter. In some instances they will hand an order up, in other cases they will promise to send the Court a proposed order.[2] Second, the parties may

---

[2] In many cases counsel will promise to send an order but neglect to do so. This also causes the Court an administrative problem in that it must hold many dozens or hundreds of matters waiting for proposed orders. To keep from drowning in pending motions, the Court will eventually deny these motions for want of prosecution, usually triggering yet another motion, or perhaps a motion to reconsider. The unofficial record for the failure to produce an order after promising to do so is four. That is, four times in the same case. The Court will not name the culprit here except to state that it is not Allan M. Tripe, Americredit's lawyer in this case.

4

request a continuance, stating that additional time is needed to conduct discovery or to conduct further settlement discussions.[3] Third, one or both of the parties may indicate that it wants an evidentiary hearing. In some instances this request is made in good faith. However, such requests are frequently made in bad faith to further protract proceedings.

In an effort to streamline these proceedings, the Court promulgated Local Rule 4001-1. It contemplated that the vast majority of the motions for relief from the automatic stay in Chapter 13 cases would be settled and that it would not be necessary to schedule hearings in most cases. If the Court's new local rule is permitted to function properly, both the Court and counsel will have more time to focus on the relatively small number of motions which must be tried and not be bogged down taking large numbers of agreed orders in open court. Unfortunately, some lawyers have persisted in checking the no box, indicating that they would not consider an adequate protection agreement, necessitating that the matter be set for hearing. Yet, after stating that they would not consider an adequate protection agreement, they nevertheless submit a proposed adequate protection agreement. The Court presumes that they do this in an effort to pressure debtors into making such agreements.[4] This defeats the purpose underlying the rule. In the case at bar, Americredit moved for relief from the automatic stay indicating that they would not consider an adequate protection agreement. The Court set the matter for hearing, losing the

---

[3] Section 362(e) provides that a motion is granted unless disposed of or an extension provided after notice and hearing, in 30 days. This provision pressures the Court to set these matters quickly, frequently catching the parties unprepared.

[4] Some lawyers have complained that the new local rules gives debtors lawyers 45 days to procrastinate. Counsel may move for a hearing prior to the expiration of the 45-day period. Moreover, if counsel for the debtor does not promptly respond to a settlement proposal, the moving party is free to withdraw its offer and go to a hearing.

5

efficiencies intended by this rule. To add insult to injury, counsel for the moving party did not even attend the September 8, 2004 hearing. Thus, Americredit was permitted to waste the Court's time but its own lawyer was able to move on to other business. It strikes the Court that the certification made, that the moving party would not consider an adequate protection agreement, was made in bad faith. It appears that Americredit moved for relief from the automatic stay, certified that it would not enter into an adequate protection agreement, yet it appears that it promptly entered into such negotiations, culminating in a proposed order. One which the Court will not enter. If moving parties check the "no" box, the Court will no longer accept proposed agreements unless both parties appear in Court. To be sure, counsel may always settle a matter prior to the time that it is heard, but its counsel must appear in court prepared to explain how the settlement came about.[5] The bottom line is as follows. Lawyers who file motions for relief from the automatic stay should not check the "no" box unless they are prepared to go to a hearing.

Motions for relief from the automatic stay frequently provide an illustration of the art of brinkmanship. While the motion under consideration here is doubtful, the majority of motions for relief from the automatic stay are well-grounded. Were these motions to go to an evidentiary hearing, a substantial majority would be granted. Interestingly, most creditors do not really want their motions granted. Rather, they are using this process to extract money or other concessions from their debtors. The question then becomes to what extent will a bankruptcy court allow itself to be used to strong arm money from debtors. In this case, the creditor has stepped over the line.

---

[5] The undersigned has been complaining for months in open court about this process. Most of the lawyers who regularly file these motions have made the change. Unfortunately, some lawyers will always test to see how far they can push.

6

The Court would stress that it has no intention to force a creditor to enter into an adequate protection agreement that is not in its best interests. Rather, the point here is that the creditor must choose one of two paths. If it rejects the settlement path, it must be prepared to litigate.

## B. Specificity

In addition to the problem discussed above, the motion in question lacks sufficient specificity. A motion "shall state with particularity the grounds therefore." Rule 9013, Fed. R. Bankr. P. To supplement the national rule, this Court's local rules require that the moving party attach a copy of any document which gives rise to the secured parties' interest to this motion. LBR 4001-1(a). In addition, where, as here, a claim of a post-petition monetary default is made, each period for which no payment has been made must be specifically identified. LBR 4001-1(c)(2)(A). The motion filed here is deficient in that it lacks specificity. First, if failed to attach proof of its security interest. Second, it failed to allege with specificity its claim of a postpetition default. This provides an independent basis upon which the motion may be denied.

## C. "Drop Dead" Provision

In this case, the proposed order contains a "drop dead" provision which is triggered by Debtor's failure to make his Chapter 13 Plan payments. If the Debtor fails to make a Plan payment the automatic stay will terminate after 20 days notice. The undersigned does not favor drop dead orders in these instances and will not enter them as a matter of course.[6] In this case, it

---

[6] A drop dead provision in those instances where the secured party is paid through the Chapter 13 Trustee, rather than directly, gives the creditor a tremendous amount of leverage. In

Case 03-12901    Doc 37    Filed 09/15/04    Entered 09/15/04 08:23:18    Desc Main
Document      Page 7 of 8

appears that there is a working wage withholding order and for that reason, the drop dead

provision should not be necessary. Counsel for the moving party was not available to answer the

Court's questions. Therefore, it will not agree to such a provision.

## D. Conclusion

The practice of law is often a two-way street. In this case, counsel for Americredit has

undermined the Court's attempt to streamline its proceedings. For the reasons set forth above,

the motion is denied. The Court will enter a separate order.

Done this 14th day of September, 2004.


/s/ William R. Sawyer
United States Bankruptcy Judge


c: Rafael Gil III, Attorney for Debtor
   Allan M. Trippe, Attorney for Americredit
   Curtis C. Reding, Trustee

---

the view of the undersigned, it is unhealthy for the bankruptcy process to create such an
imbalance.

Case 03-12901    Doc 37    Filed 09/15/04    Entered 09/15/04 08:23:18    Desc Main
Document    Page 8 of 8